# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# CEDAR RAPIDS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 23-CR-34-CJW-MAR |
| Plaintiff, | **ORDER** |
| vs. | |
| JOHNNY MARTELL BROWN, | |
| Defendant. | |

## I. INTRODUCTION

This matter is before the Court on defendant's Motion to Suppress. (Doc. 42). The government filed a timely resistance. (Doc. 46). The Court referred defendant's motion to the Honorable Mark A. Roberts, United States Magistrate Judge, for a Report and Recommendation ("R&R"). On August 8, 2023, Judge Roberts held a hearing on the motion to suppress. (Doc. 48). Then, on August 25, 2023, Judge Roberts recommended the Court deny defendant's motion to suppress. (Doc. 49). Defendant objected to Judge Roberts' R&R. (Doc. 53). The government also objected to Judge Roberts' R&R. (Doc. 54). For the following reasons, the Court **overrules** defendant's objections, **sustains** the government's objections, **adopts-in-part** Judge Roberts' R&R, and **denies** defendant's Motion to Suppress.

## II. STANDARD OF REVIEW

The Court reviews Judge Roberts' R&R under the statutory standards found in Title 28, United States Code, Section 636(b)(1):

> A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate

judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions.

*See also* FED. R. CIV. P. 72(b) (stating identical requirements). While examining these statutory standards, the United States Supreme Court explained:

> Any party that desires plenary consideration by the Article III judge of any issue need only ask. Moreover, while the statute does not require the judge to review an issue de novo if no objections are filed, it does not preclude further review by the district judge, sua sponte or at the request of a party, under a de novo or any other standard.

*Thomas v. Arn*, 474 U.S. 140, 154 (1985). Thus, a district court may review de novo any issue in a magistrate judge's report and recommendation at any time. *Id.* If a party files an objection to the magistrate judge's report and recommendation, the district court must review the objected portions de novo. 28 U.S.C. § 636(b)(1). In the absence of an objection, the district court is not required "to give any more consideration to the magistrate [judge]'s report than the court considers appropriate." *Thomas*, 474 U.S. at 150.

### III. FACTUAL BACKGROUND

After reviewing the hearing transcript (Doc. 52), the Court finds Judge Roberts accurately and thoroughly set forth the relevant facts in the R&R. The Court adopts Judge Roberts' summary of the facts here.

> On December 16, 2022, at approximately 6:35 p.m., Cedar Rapids Police Sergeant Blake Crutchley observed a traffic violation at First Avenue and 27th Street East in Cedar Rapids, Iowa. Sergeant Crutchley first observed Defendant's vehicle, a black Dodge Charger with Minnesota license plates, while patrolling B Avenue and 16th Street Northeast in Cedar Rapids. Sergeant Crutchley's interest in the Charger was triggered by the absence of a front license plate. Sergeant Crutchley turned around to follow the Charger, but he did not notice anything about the driver or notice any traffic violations until the Charger turned onto First Avenue.

Specifically, Sergeant Crutchley observed the Charger make a right-hand turn from 27th Street East onto westbound First Avenue, proceeding directly into the left lane instead of turning into the first available right lane. Sergeant Crutchley testified that, at the time of the traffic violation, it was very cold with light snow. However, he did not observe any obstacle in the closest right lane, any black ice in the closest right lane, or any issues with visibility. (Crutchley Hr'g Test. at 5; Gov. Exhibit 1 at 00:19-00:26.) Further, Sergeant Crutchley testified that he was following the Charger and was able to turn into the closest available right lane without any issues. (Crutchley Hr'g Test. at 6.)

While following the Charger, Sergeant Crutchley observed a second alleged traffic violation. The Charger was traveling westbound on First Avenue and briefly drifted over what Sergeant Crutchley referred to as the "center yellow line" or the "yellow line" and then back. (*Id.* at 7.) In the area in question, First Avenue consists of two lanes in both directions and a common center turn lane. A driver from either direction can move from the regularly traveled portion of the street into the center lane and then exit First Avenue by a lefthand turn across the oncoming lanes. The purpose of the turn lane is signified with large, curved arrows that point in opposite directions that are painted in white on the pavement. The turn lane is bounded on either side by solid yellow lines and, just inside those solid lines, dashed yellow lines. There is no line or other marker showing the center of the street. This generally describes the markings along the route in question. The markings vary at significant intersections (e.g., 27th Street, Cottage Grove Avenue, and 19th Street.)[.]

From Sergeant Crutchley's testimony, the video, and the foregoing description of the turn lane, I conclude that the Charger did not cross the center line of First Avenue as it entered the turn lane. Rather, the Charger's driver's side tires crossed the solid yellow line of the turn lane closest to the interior westbound lane (and perhaps the dashed yellow line) and then returned to the nearest westbound lane of travel.[1] Sergeant Crutchley testified that he observed no obstacles in the road and knew no reason that prevented the Charger from continuing within the bounds of its lane. (*Id.* at 8; Gov. Exhibit 1 at 00:41-00:48.)

A third traffic violation allegedly occurred while Sergeant Crutchley was following the Charger. Government Exhibit 2 is a screenshot from Sergeant Crutchley's in-car audio and video recording system, which shows

---

[1] The government objects to this factual finding and resulting legal conclusion. (Doc. 54).

3

that at 6:35:51 p.m., Sergeant Crutchley's speed was 36 miles per hour, one mile per hour over the posted 35 miles per hour speed limit on First Avenue. Sergeant Crutchley testified that while he was following the Charger, he was pacing the vehicle, meaning that the Charger was also traveling 36 miles per hour. (Crutchley Hr'g Test. At 9.)

Sergeant Crutchley also testified about an alleged fourth traffic violation. The Charger, while traveling southbound on 19th Street and approaching Second Avenue SE, came to a complete stop even though there was no stop sign at Second Avenue SE. (*Id.* at 10; Gov. Exhibit 1 at 01:20-01:29.)

Ultimately, Sergeant Crutchley pulled the Charger over. Sergeant Crutchley made contact with the driver, Defendant. Also in the Charger were Arterria Lipsey in the front passenger seat and two small children in the back of the vehicle. Defendant was identified via an Iowa ID card. Sergeant Crutchley ran the ID card, which showed Defendant had a suspended driver's license. Upon approaching the vehicle a second time, Sergeant Crutchley detected the odor of raw marijuana. Sergeant Crutchley also noticed that the sunroof on the Charger was open, which was unusual given that it was very cold and snowing. Further, Sergeant Crutchley observed a small amount of "shake" or marijuana remnants on Defendant's left pant leg. Sergeant Crutchley asked Defendant to step out of the Charger. Defendant refused. Fearing that Defendant might attempt drive off, Sergeant Crutchley tried to open the Charger's door from the outside. However, the door was locked, and Sergeant Crutchley reached through the open window and opened the door from the inside. Eventually, Defendant exited the vehicle. (Crutchley Hr'g Test. At 10-13.)

When Defendant exited the Charger, Sergeant Crutchley could smell marijuana emanating from Defendant's person. Defendant admitted smoking marijuana and stated, "I smoke weed, bro." Law enforcement searched the Charger. Under the hood of the Charger, officers found a stolen firearm wrapped in a white T-shirt. When officers found the handgun, Defendant was seated in the back of a patrol car and stated, "They just found the pipe." Defendant was also searched. Law enforcement found a Cheetos bag stuffed down Defendant's pants which contained 41 grams of marijuana. (*Id.* at 13-15.)

At the police station, Defendant gave a post-*Miranda* interview. Defendant made no admissions regarding the firearm but told law enforcement that he had purchased the marijuana earlier that day. Further, Defendant stated that he smoked a lot of marijuana. He also admitted

4

having gone to prison for distributing heroin. Finally, Defendant stated that he regularly drove the Charger. (*Id.* at 15-16.)

(Doc. 49, at 2-6).

## IV. ANALYSIS

In the Motion to Suppress, defendant argues the Court should suppress any evidence obtained during the December 16, 2022 traffic stop and subsequent search of defendant's vehicle, including any statements defendant made to officers because the stop and search were unreasonable under the Fourth Amendment, and the evidence is fruit of the poisonous tree. (Docs. 42; 43; 52, at 65-66).

In his R&R, Judge Roberts recommended the Court deny defendant's motion to suppress. (Doc. 49). Judge Roberts found the evidence supported that Sergeant Crutchley had probable cause to stop defendant's vehicle because defendant turned into the left lane instead of the closest available right lane despite no obstruction in the right lane. (*Id.*, at 10-12). But Judge Roberts found the evidence did not support a finding that Sergeant Crutchley also had probable cause to stop the vehicle based on defendant's vehicle's tires crossing into the turn lane because the car did not cross the median or center line of the roadway and thus did not violate the cited Iowa Code provisions. (*Id.*, at 12-15). Judge Roberts also found Sergeant Crutchley did not have probable cause based on defendant's stop on 19th Street; defendant only stopped in an uncontrolled portion of the roadway to avoid colliding with the vehicle in front of him because the vehicle in front of defendant stopped in the roadway. (*Id.*, at 15-16). Nor did Judge Roberts find the evidence supported a finding of probable cause based on defendant's speeding, as Sergeant Crutchley had no knowledge of defendant's speed when he initiated the traffic stop.[2] (*Id.*, at 16-17).

---

[2] Judge Roberts also found defendant's speed irrelevant because the sergeant was unaware of defendant's speed when determining whether he had probable cause. (Doc. 49, at 17).

After finding Sergeant Crutchley had probable cause based only on the improper turn, Judge Roberts also found the sergeant had probable cause to search the vehicle. (*Id.*, at 17). Judge Roberts found the evidence supported there was probable cause to search the vehicle because upon return to defendant's vehicle after running defendant's identification and discovering defendant was driving on a suspended license, Sergeant Crutchley smelled raw marijuana, saw the sunroof open despite it being cold and snowing, and observed marijuana residue—shake—on defendant's pants. (*Id.*, at 17-19). Once defendant exited his vehicle, Sergeant Crutchley smelled marijuana emanating from defendant's person, and defendant admitted to marijuana consumption, stating "I smoke weed, bro." (*Id.*).

Defendant objects to Judge Roberts' findings in the R&R: (1) defendant's right turn into the leftmost lane of First Avenue supported a finding of probable cause; and (2) Sergeant Crutchley had probable cause to search defendant's vehicle. (Doc. 53).

The government objects to Judge Roberts' findings in the R&R that: (1) although Sergeant Crutchley had probable cause based on a separate and distinct ground, he did not have probable cause to stop the vehicle based on defendant's vehicle crossing the "center yellow line[;]" and, consequently, (2) to the factual finding that defendant's vehicle did not cross the center line. (Doc. 54).

### A.   *Probable Cause to Initiate a Traffic Stop*

Defendant objects to Judge Roberts' conclusion that there were any grounds for finding probable cause to initiate the traffic stop. (Doc. 53). Though the government does not object to the finding that there existed probable cause, it objects to Judge Roberts' conclusion that probable cause did not exist on the basis of additional grounds. (Doc. 54).

A traffic stop constitutes a seizure for purposes of the Fourth Amendment, and therefore must be supported by probable cause or reasonable, articulable suspicion that

criminal activity has occurred or is occurring. *United States v. Hollins*, 685 F.3d 703, 705–06 (8th Cir. 2012); *United States v. Cox*, 992 F.3d 706, 709 (8th Cir. 2021); *United States v. Fuehrer*, 844 F.3d 767, 772 (8th Cir. 2016); *United States v. Sallis*, 507 F.3d 646, 649 (8th Cir. 2007). "Reasonable suspicion is a less demanding standard than probable cause[.]" *Alabama v. White*, 496 U.S. 325, 330 (1990).

Probable cause is present when "there is a fair probability that contraband or evidence of a crime will be found in a particular place." *United States v. Shackleford*, 830 F.3d 751, 753 (8th Cir. 2016) (cleaned up). "A[n] officer has probable cause . . . when the facts available to him would warrant a person of reasonable caution in the belief that contraband or evidence of a crime is present." *Florida v. Harris*, 568 U.S. 237, 243 (2012) (cleaned up). "[T]he mere probability or substantial chance of criminal activity, rather than an actual showing of criminal activity, is all that is required." *United States v. Winarseke*, 715 F.3d 1063, 1067 (8th Cir. 2013) (internal citation and quotations omitted).

In contrast, reasonable suspicion requires that an officer be "aware of particularized, objective facts which, taken together with rational inferences from those facts, reasonably warrant suspicion that a crime is being committed." *Hollins*, 685 F.3d at 705 (citation and internal quotation marks omitted). Whether under the probable cause standard or reasonable-suspicion standard, an officer's subjective intentions play no part in the analysis. *Whren v. United States*, 517 U.S. 806, 813 (1996). Further, reasonable suspicion may exist when based on a mistake of fact. *United States v. Smart*, 393 F.3d 767, 770 (8th Cir. 2005). A mistake of fact must be objectively reasonable to justify a stop as lawful. *Id.*; *United States v. Williams*, 929 F.3d 539, 544 (8th Cir. 2019). Similarly, probable cause or reasonable suspicion may be based on a mistake of law but only if the mistake of law was objectively reasonable—subjective good faith is irrelevant. *United States v. Forjan*, 66 F.4th 739, 746 (8th Cir. 2023).

7

Case 1:23-cr-00034-CJW-MAR   Document 55   Filed 10/03/23   Page 7 of 16

For the reasons that follow, the Court finds probable cause existed to stop defendant's vehicle.

### 1. *Right Turn into the Leftmost-Westbound Lane*

Defendant objects to Judge Roberts' conclusion that Sergeant Crutchley had probable cause to initiate a traffic stop based on defendant's turn into the leftmost-westbound lane rather than the closest right-westbound lane. (Doc. 53, at 1-8). In support of this objection, defendant first argues Iowa Code Section 321.311(1)(a) allows a driver to reasonably adjust their turn to account for road and weather conditions. (*Id.*, at 2-4). Defendant further asserts he turned as close as practical to the right-hand curb, given the weather. (*Id.*, at 4-6). Last, defendant argues no reasonable officer in the sergeant's position would have determined defendant violated Section 321.311(1)(a) and thus would have determined probable cause existed based on that turn.

Here, the Court finds Sergeant Crutchley had probable cause to initiate a traffic stop based on the turn. Under Section 321.11(1)(a), a driver who is turning right at an intersection must turn "as close as practical to the right-hand curb or edge of the roadway." Defendant suggests this language allows for drivers to turn into the non-right-most lane when there is an obstruction, including a weather obstruction. Likewise, the Court interprets the language "as close as practical" to account for obstructions.

But the application of an obstruction exception to these facts is untenable because the evidence does not indicate defendant could not have safely turned into the right lane—in other words, the Court has no evidence there was an obstruction and instead has evidence indicating there was not one. Dashboard camera footage shows no obstruction in the road, be it snow pile, pothole, animal, or otherwise. (Government's Exhibit 1, at 6:35:19 PM-6:35:27 PM). That Sergeant Crutchley turned into the right lane within seconds of defendant's turn into the left, did not slide or skid, and did not record or observe an obstruction indicates there was not one and that it was practical to turn into

8

the right-most lane. (*Id.*); *but see State v. Carney*, 804 N.W.2d 315, at *3 (Iowa Ct. App. 2011) (finding under Iowa Code Section 321.11(1)(b) that driver's left-hand turn into the right-most lane on an unplowed, snow-and-ice-filled road after considering weather and road conditions and certainty the wide turn could be safely made was not illegal and thus did not create probable cause). The Court has no evidence, including from the video recording, showing any ice or other obstacle, and thus, finds the evidence shows defendant was able to make a right turn as close as practical to the edge of the roadway but failed to do so. (Government's Exhibit 1, at 6:35:19 PM-6:35:27 PM). The Court finds, therefore, that Sergeant Crutchley had probable cause to initiate the traffic stop, as the facts available to him would warrant a person of reasonable caution in the belief that a traffic violation occurred when defendant turned into the leftmost-westbound lane.

Defendant asserts that no reasonable officer would have believed he had probable cause based on the turn: it was snowing lightly, the roads were wet, and it was a cold night making black ice difficult to see. And the sergeant drove a different car than defendant and could not assume his ability to turn correctly had any bearing on defendant's ability to turn into the right-most lane. (Doc. 53, at 6-8). But any vehicle turning onto ice, whether built for winter, might slip on the ice when turning, and when Sergeant Crutchley's car did not slip while turning, he had no reason to assume there was ice. Sergeant Crutchley, aware of weather conditions, did not observe ice or other obstruction, the roads appeared to have been cleared, and he did not face any issue turning. (Government's Exhibit 1, at 6:35:19 PM-6:35:27 PM). Even knowing it was cold and snowing, it was reasonable for Sergeant Crutchley to believe the turn could have been made into the right-most lane based on all the facts before him at the time of the turn and his subsequent determination that a traffic violation had just occurred.

Consequently, the Court overrules defendant's objection on this ground.

## *2.  Tires Crossing into Turn Lane*

The government objects to Judge Roberts' factual finding that the edge of the shared-turn lane was not the equivalent of the median or "center line" and resulting conclusion that there was no probable cause to believe defendant violated Iowa Code Sections 321.297(1) or 321.297(3).  (Doc. 54).  In support, the government asserts Sergeant Crutchley had, at minimum, reasonable suspicion the vehicle had crossed the center yellow line and committed a traffic violation and failed to drive upon the right half of the road in violation of Section 321.297(1) and (3).  (*Id.*, at 3-5).  But even if he was wrong, the government urges, the sergeant's mistake was objectively reasonable.  (*Id.*, at 5).

Iowa has adopted the Manual on Uniform Traffic Control Devices for Streets and Highways ("MUTCD"), which discusses edge line markings, center line markings, and two-way left-turn lanes.  IOWA ADMIN. CODE r. 761-130.1;  FED. HIGHWAY ADM'R., *Manual on Uniform Traffic Control Devices for Streets and Highways (MUTCD)* (2022 ed.).  The MUTCD provides edge line markings are "white or yellow pavement marking lines that delineate the right or left edge(s) of a traveled way."  § 1A.13(58).  A center marking line is defined as "the yellow pavement marking line(s) that delineates the separation of traffic lanes that have opposite directions of travel on a roadway.  These markings need not be at the geometrical center of the pavement."  § 1A.13(27). Elsewhere, the MUTCD instructs that a two-way left-turn lane that is not used as a reversible lane must bear lane line pavement markings on each side of the line consisting of a "normal broken yellow line and a normal solid yellow line to delineate the edges of a lane that can be used by traffic in either direction[.]"  § 3B.03.

In *State v. Tague*, the Iowa Supreme Court found that a vehicle driving on a roadway having four or more lanes whose tires crossed briefly over the left-most, northbound lane's edge lines did not violate Section 321.297(3).  676 N.W.2d 197, 202

10

(Iowa 2004). The court reasoned that because there was a designated median that the median was the "center line," so the driver had not driven "to the left of the center line of the roadway" as prohibited by Section 321.297(3). *Id.*; IOWA CODE § 321.297(3).[3]

*Tague* is distinguishable. Here, there is no designated median or center line, only the shared turn lane. And in *Tague*, the officer believed that the brief crossing over the line—which was "barely" a cross over the line—indicated intoxication; here, defendant stayed over the line for eight seconds and was completely over the yellow edge line of the turn lane as he drove, which Sergeant Crutchley believed was a traffic violation. Also, unlike in *Tague*, there was no immediate return of defendant's wheels after crossing over. *See Tague*, 676 N.W.2d at 200-01. *Tague* does not preclude probable cause that a traffic violation occurred based on crossing into a lane without intention to use that lane—it only precludes reasonable suspicion of intoxication based on a violation of Section 321.297(3) when based only on extremely brief crossing of an edge line paired with nothing else. *See State v. Struve*, 956 N.W.2d 90, 104 (Iowa 2021); *State v. Tyler*, 830 N.W.2d 288, 292 (Iowa 2013). An extremely brief crossing barely over the edge line is not what occurred here—defendant drove in two lanes for a period of eight seconds, which the officer believed was in violation of Iowa traffic laws. There is no apparent impracticality that precluded defendant from remaining in his lane, and the conditions of the roadway were clear despite it snowing. Sergeant Crutchley testified he saw no manhole the night of the stop, and based on what he observed that evening, defendant could have remained in his lane. (Doc. 52, at 38-39, 56). Unlike in *Tague*, defendant moved back into the left-most, westbound lane after straddling the turn lane's edge line for eight seconds, suggesting an objective basis that defendant had not ascertained the

---

[3] Unlike in *Tague*, the government has not also argued under Iowa Code Section 321.306(1), which requires a driver on a marked road of three or more lanes of traffic to drive "as nearly as practical entirely within a single lane and shall not be moved from such lane until the driver has first ascertained that such movement can be made with safety."

11

safety of crossing that line because he had not intended to cross. In all, the facts in *Tague* are not sufficiently similar for the Court to find *Tague* compels the conclusion that Sergeant Crutchley's belief defendant committed a traffic violation was objectively unreasonable. *See United States v. Herrera-Gonzalez*, 474 F.3d 1105, 1110-11 (8th Cir. 2007).

Rather, Sergeant Crutchley had an objectively reasonable basis—even if mistaken—to believe defendant breached a traffic law. Defendant drove in both the left-most westbound and the shared-turn lanes for a period of eight seconds. (Government's Exhibit 1, at 6:35:42 PM-6:35:49 PM). Given the difference in facts from that in *Tague* and lack of guidance in both the Iowa Code and MUTCD, it is not clear that a center turn lane, in the absence of some median or unbroken double yellow lines, is never the center of the road and that when defendant crossed the edge line that he was not also driving left of center. *See* IOWA CODE Section 321.297(3). Further, none of the exceptions listed in Section 321.297(1) applied: defendant was not driving in the turn lane to overtake another vehicle; he was not avoiding any apparent obstruction; defendant was not driving on a roadway of three marked lanes; and defendant was not driving upon a one-way roadway. It would be objectively apparent to any officer that by driving in multiple lanes at once without any obstacle that there was a fair probability defendant was in violation of some traffic law, even if the officer was unsure of the exact code provision at the time. *United States v. Cox*, 992 F.3d 706, 709 (8th Cir. 2021) ("We made clear in [*Martin*] that the determinative question is not whether a traffic violation had actually occurred, but 'whether an objectively reasonable police officer could have formed a reasonable suspicion that [the driver] was committing a code violation.'"). Thus, Sergeant Crutchley, having observed what he reasonably, objectively believed was a code violation had probable cause to stop defendant's vehicle. *United States v. Holly*, 983 F.3d 361, 364 (8th Cir. 2020) (stating any traffic violation, without regard to

perceived severity, creates probable cause to perform a traffic stop) (further citations omitted); *United States v. Martin*, 411 F.3d 998, 1001 (8th Cir. 2005) ("Any mistake of law that results in a search or seizure, therefore, must be *objectively* reasonable to avoid running afoul of the Fourth Amendment.") (emphasis in original), *abrogated on other grounds by Webster v. Westlake*, 41 F.4th 1004 (8th Cir. 2022). The Court finds, therefore, Sergeant Crutchley had probable cause to believe one or more traffic violations occurred.

Accordingly, the Court finds probable cause and sustains the government's objection on this ground.

### 3. 19th Street Stop in the Roadway

Neither defendant nor the government objects to Judge Roberts' conclusion that defendant's stop on 19th Street did not give rise to probable cause. (Doc. 49, at 15-16). Having performed its own review of the facts and law here, the Court agrees with this conclusion. Iowa Code Section 321.358(3) states that "[n]o person shall stop . . . a vehicle, except when necessary to avoid conflict with other traffic or in compliance with the directions of a police officer or traffic-control device, in any of the following places: . . . 3. Within an intersection." But dash camera footage shows defendant stopped in an uncontrolled portion of the roadway because the vehicle in front of him stopped; defendant needed to stop to "avoid conflict with other traffic." (Government's Exhibit 1, at 6:36:21 PM-6:36:30 PM); IOWA CODE § 321.358 (2023). Therefore, there was no traffic violation when defendant brought his vehicle to a partial stop in the roadway in an uncontrolled portion of the road.

Thus, the Court adopts this conclusion and finds no probable cause existed based on defendant's stop in the road.

13

#### *4.     Speeding*

Neither party objected to Judge Roberts' legal conclusion that because Sergeant Crutchley had no knowledge of and, thus, did not consider defendant's speed in his probable cause determination, the fact defendant was speeding is irrelevant to the question of probable cause here and provided no basis for finding probable cause to stop defendant. (Doc. 49, at 16-17).  The Court has done its own research and examination of this matter and agrees with Judge Roberts' findings and conclusions.  An officer must determine whether probable cause exists based on the facts available to the officer at that time.  *See United States v. James*, No. 20-CR-49-CJW-MAR, 2021 WL 3408486, at *6 (N.D. Iowa Aug. 4, 2021) (citing *Harris*, 568 U.S. at 243).  This fact was not within Sergeant Crutchley's knowledge when he determined he had probable cause to stop defendant and, as such, provides no basis for probable cause.

Thus, the Court adopts this conclusion and finds no probable cause existed based on defendant's speed.

### B.     *Probable Cause to Search Defendant's Vehicle*

Defendant asserts there was no probable cause to search defendant's vehicle. (Doc. 53, at 8-9).  Specifically, defendant argues there was no probable cause to search the engine compartment when Sergeant Crutchley smelled marijuana because he had no reason to believe there was marijuana under the hood of the vehicle.  (*Id.*).

When an officer has lawfully stopped a vehicle, the officer may "search the vehicle without a warrant if the officer has probable cause" to search the vehicle under what is called the "automobile exception" to the Fourth Amendment warrant requirement. *United States v. Mayo*, 627 F.3d 709, 713–14 (8th Cir. 2010).  "The automobile exception may apply even when there is little to no chance that the vehicle will be moved or its contents destroyed." *United States v. Soderman*, 983 F.3d 369, 376 (8th Cir. 2020) (further citation omitted).

14

The Court finds Sergeant Crutchley had probable cause to search defendant's vehicle. During the traffic stop, Sergeant Crutchley smelled an odor of marijuana emanating from defendant's vehicle. (Government's Exhibit 4, at 6:45:54 PM-6:46:01 PM; Doc. 52, at 13). As the Eighth Circuit Court of Appeals has repeatedly held, once the sergeant smelled marijuana emanating from defendant's vehicle, he had probable cause to search the vehicle. *United States v. Williams*, 955 F.3d 734, 737 (8th Cir. 2020) (stating "marijuana provides probable cause for a warrantless search of a vehicle under the automobile exception"); *United States v. Beard*, 708 F.3d 1062, 1065 (8th Cir. 2013) (same). Further, Sergeant Crutchley observed marijuana shake or residue on defendant's left pant leg. (Government's Exhibit 4, at 6:46:37 PM-6:46:40 PM; Doc. 52, at 47). This observation of marijuana residue by itself gave Sergeant Crutchley probable cause to search defendant's vehicle because it indicated there could be additional marijuana in the vehicle. *United States v. Booker*, 269 F.3d 930, 932 (8th Cir. 2001) (holding officer's observation of marijuana residue in the vehicle during lawful traffic stop gave the officer probable cause to search). Last, Sergeant Crutchley and other officers smelled the marijuana odor coming from defendant's person after defendant exited the vehicle and observed defendant's sunroof open despite it being cold and snowing; defendant also admitted at multiple points throughout the stop that he smokes "weed" or marijuana. (*See, e.g.*, Government's Exhibit 4, at 6:48:18 PM-6:48:22 PM, 6:51:12 PM-6:51:15 PM). (Doc. 52, at 13, 14, 47); *United States v. Brown*, 634 F.3d 435, 438 (8th Cir. 2011) (finding probable cause to search vehicle when officers detected marijuana odor from vehicle and defendant admitted to smoking marijuana); *United States v. Myers*, No. 2:18cr95, 2018 WL 4040170, at *6 (E.D. Va. Aug. 23, 2018) ("The Court agrees with Investigator Gibson's assessment that an open sunroof in chilly temperatures in the middle of winter is unusual and is consistent with vehicle occupants trying to release odor and smoke from the vehicle while smoking inside."). In the totality, the marijuana scent

15

coming from the vehicle and from defendant, marijuana residue in the car on defendant's pants, the open sunroof despite the weather, and defendant's admission that he used marijuana would indicate to a reasonable officer that there was a fair probability that additional contraband or evidence of a crime, namely additional marijuana, would be found in the vehicle. *See Booker*, 269 F.3d at 932; *Brown*, 634 F.3d at 438. Thus, Sergeant Crutchley had probable cause to search the vehicle.

Because Sergeant Crutchley had probable cause to search the vehicle, he had probable cause to search the entire vehicle. *United States v. Smith*, 990 F.3d 607, 612 (8th Cir. 2021). Controlling precedent does not support defendant's argument that more was required to check the engine area of the vehicle, and testimony regarding the search of the engine area did not call into doubt the claim marijuana odor could emit from the engine area. *See id.*

Accordingly, the Court overrules defendant's objection.

## V. CONCLUSION

For these reasons, defendant's objections are **overruled**, the government's objections are **sustained**, Judge Roberts' R&R (Doc. 49) is **adopted-in-part**, and defendant's Motion to Suppress (Doc. 42) is **denied**.

**IT IS SO ORDERED** this 3rd day of October, 2023.

_____
C.J. Williams
United States District Judge
Northern District of Iowa